WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Nicholas Lew Blackwater, | ) | CIV 14-1533-PHX-JAT (MHB) |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Charles L. Ryan, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT COURT:

Petitioner Nicholas Lew Blackwater, who is confined in the Arizona State Prison Complex, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer (Doc. 7), and Petitioner filed a traverse (Doc. 10).

## **BACKGROUND**[1]

On July 1, 2005, the Maricopa County Grand Jury indicted Petitioner as follows: Counts 1, 7 and 11, kidnapping, class 2 dangerous felonies; Counts 2 and 8, aggravated assault, class 2 dangerous felonies and dangerous crimes against children; Count 3, sexual abuse, a class 5 dangerous felony; Counts 4, 9 and 14, sexual assault, class 2 dangerous felonies; Count 5, kidnapping, a class 2 felony; Count 6, sexual assault, a class 2 felony; and

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 7 – Respondents' Answer.

1  Counts 10, 12 and 13, aggravated assault, class 3 dangerous felonies. (Exh. A.) The facts
2  underlying the charges are set forth in the presentence report.

Counts I, II, III and IV:

The following information is summarized from Phoenix Police Departmental Report #70985951:

The defendant approached thirty-seven year old Lynette Davis as she walked down the street on June 16, 1997. He demanded to see her identification and instructed her to get in his vehicle. Because the victim initially assumed he was an undercover police officer, she complied. The defendant subsequently solicited her assistance to cash a check to no avail and drove her to a location behind [some] semi-trucks. After he held a knife to her throat, the victim became frightened. The defendant subsequently threatened to kill her and ripped her shirt and bra away from her body. He instructed the victim to pretend to enjoy the assault and again threatened to kill her if she looked in his direction or spoke to him. The defendant inserted his penis into the victim's vagina and engaged in sexual intercourse against her will for approximately five minutes. He subsequently sucked on her nipples and threatened to assault her through anal intercourse, but he did not do so. The victim believed the defendant planned to kill her because he continued to wave the knife toward her throat. After an hour or longer elapsed, the defendant drove away from the scene in possession of the victim's wallet.

Phoenix Police officers ensured the victim received medical attention prior to transporting her for a rape examination. One of the police officers, who was standing in the vicinity of the treatment room, overheard the victim screaming in pain during the examination.

When the defendant was interviewed in the Arizona Department of Corrections on October 28, 2004, he initially denied that he even picked up hitchhikers or used the services of prostitutes. Once he was confronted with DNA evidence and the victims' statements, however, the defendant asserted that he had engaged in consensual vaginal intercourse with prostitutes, who reportedly might have filed claims of assault or rape because he never paid them for their services.

Counts V and VI:

The following information is summarized from Phoenix Police Departmental Report #71422849:

Thirty-one year old Kathleen Marcyoniak was hitchhiking on August 29, 1997 when the defendant offered her transportation, and the victim observed a child in the car seat in the back of the vehicle after she accepted his offer. The defendant subsequently drove the victim to isolated location where he demanded her property and took off her pants. The defendant slapped the victim in the face and threatened to kill her. He forcibly engaged in vaginal intercourse with the victim as his child cried in the back seat, and once he was finished, the defendant left the scene in possession of the victim's money, a false tooth and other property.

Counts VII, VIII, IX, X:

The following information is summarized from Phoenix Police Departmental Report #91020663:

On June 22, 1999, thirty-three year old Stephanie Jones was working as a prostitute when she encountered the defendant and stepped into his vehicle. He subsequently drove her into an alley, produced a knife resembling a box cutter, and demanded that the victim engage in anal sexual relations with him. Because he held the knife to her throat, the victim felt compelled to remove her dress and assumed a position on her hands and knees in the passenger seat of his vehicle. The victim was uncertain if the defendant ejaculated, but once he appeared to be finished, she asked him to drive her away from this area. When the defendant refused, the victim, who was angered by the assault, kicked him in the head, whereupon the defendant responded by cutting her breast with [the] knife. He subsequently left the area, and the victim managed to locate transportation to a hotel room she shared with her boyfriend, who transported her to the hospital. After police officers arrived at the hospital, they observed a four-inch long gaping wound that required stitches on the victim's right breast.

During the investigation of this offense, detectives spoke with the defendant's wife, who admitted that her children discovered blood in the back of their van in 1999. Because she was uncertain what action to take, Mrs. Blackwater cleaned the van and did not inform authorities.

Counts XI, XII, XIII, XIV:

The following information is summarized from Phoenix Police Departmental Report #2001-12007255:

On October 26, 2001, the defendant threatened thirty-three year old Jodie Dicken with a knife as she walked down the street and ordered her to get into his vehicle. He voiced his plan to rape and kill her and reported that he had killed his first rape victim. The defendant held the knife against the victim's ribs and drove her to an area near the railroad tracks. Once the defendant stopped his vehicle, he jumped on top of the victim and stabbed her right arm. The victim fought back and initially retrieved the knife from the defendant, but he managed to gain control of it and threatened to kill her if she attempted to take it again. The defendant reported that he planned to have anal sex with the victim, but he apparently changed his mind and forced her to endure non-consensual vaginal intercourse for five to ten minutes. The defendant subsequently threw the victim into his vehicle as she attempted to dress herself, but he maintained possession of her purse containing credit cards, checks and cellular phone. Once the victim finished pulling her pants back on, she attempted to solicit assistance by screaming at individuals in passing cars, and a security guard ultimately heard her and contacted law enforcement authorities.

The victim was transported to the Family Advocacy Center for a rape examination after police officers photographed her injury, which was not described in any other detail in the police report.

<u>Related Offenses:</u>

\* \* \*

According to Phoenix Police Departmental Report #2000-01160779, thirty-six year old Dawn Toftee requested transportation from the defendant on July 30, 2000. He immediately drove erratically to a location different to where she requested, grabbed her hair and pulled out a long knife with a four-inch blade. Using extremely profane and descriptive language, the defendant informed the victim that he planned to engage in anal sexual intercourse with her, and threatened to kill her if she inadvertently defecated on his penis. The victim felt the defendant's penis in her anus for approximately five minutes before he ejaculated on top of her. The defendant subsequently cut a piece of the victim's sleeve with his knife to clean himself and pushed her from his vehicle.

Officers observed the victim had what appeared to be spots of blood on her shirt and purse, and she was transported for a rape examination after medical personnel treated her.

The victim did not provide officers a means to contact her and numerous subsequent attempts to do so were unsuccessful.

(Exh. D at 1-3.)

On February 22, 2006, Petitioner entered a plea agreement in which he agreed to plead guilty to: Counts 4, 9 and 14 as charged, sexual assault, class 2 felonies; Count 5 as charged, kidnapping, a class 2 felony; Count 3 as charged, sexual abuse, a class 5 felony; and Count 6 as amended, attempted sexual assault, a class 3 felony. (Exh. B at 1.) In exchange, the State agreed to dismiss Counts 1, 2, 7, 8, and 10-13, the allegations of dangerousness, and not to file charges arising out of PPD DR 2000-01160779. (<u>Id.</u> at 2.)

The plea agreement stipulated that Petitioner would be sentenced as follows: within the aggravated range of 7-14 years of prison on each of Counts 4, 9, and 14 (7 years being the presumptive term); and within the aggravated range of 7 to 12.5 years of prison on Count 5 (5 years being the presumptive term) – the sentences imposed in all those counts to be served consecutively. (Exh. B at 2.) Additionally, Petitioner agreed to be sentenced to lifetime probation on Counts 3 and 6, but should probation be rejected that the resulting prison sentences would be served consecutively to each other and to the sentences imposed in Counts 4, 5, 9 and 14. (<u>Id.</u>) Petitioner specifically agreed to the two following relevant provisions:

> The parties hereto fully and completely understand and agree that by entering into a plea agreement, the defendant consents to judicial factfinding by preponderance of the evidence as to any aspect or enhancement of sentence. In making the sentencing determination, the court is not bound by the rules of evidence.
>
> I have read and understand the provisions of this agreement and the addendum to this plea agreement. I have discussed the case and my constitutional rights with my lawyer. I understand that by pleading GUILTY I will also be waiving and giving up my right to a trial by jury to determine guilt and to determine any fact used to impose a sentence within the range set forth in Paragraph 1 of this agreement.

(Exh. B at 4.) The trial court went over all the special conditions with Petitioner in open court, and advised him "of all pertinent constitutional rights and rights of review." (Exh. C at 1.)

On March 23, 2006, the trial court sentenced Petitioner to an aggravated term of 14 years of imprisonment on Count 4; to an aggravated term of 12.5 years of imprisonment on Count 5, to be served consecutively to Count 4; to an aggravated term of 14 years of imprisonment on Count 9, to be served consecutively to Count 5; and to an aggravated term of 14 years of imprisonment on Count 14, to be served consecutively to Count 9. (Exh. E at 2-3.) The trial court also placed Petitioner on concurrent terms of lifetime probation for Counts 3 and 6, to commence upon absolute discharge from prison for each separate offense in Counts 4, 5, 9 and 14. (Id. at 3-4.) At sentencing, Petitioner received and signed a "Notice of Rights of Review After Conviction and Procedure." (Exh. F.)

On April 6, 2007, Petitioner filed an untimely PCR notice. (Exh. G.) On April 27, 2007, the trial court dismissed it, finding:

> Defendant filed an untimely Notice of Post-Conviction Relief on April 6, 2007. Defendant was sentenced on March 23, 2006.
>
> Defendant claims he should be allowed to file this untimely notice because his attorney failed to file the notice after being instructed to do so. Defendant was advised at the time of sentencing, and in the Notice of Rights of Review After Conviction and Procedure that he signed on March 23, 2006, that it was his responsibility to file the notice with the 90-day time period. He has failed to provide the court with meritorious reasons why the failure to timely file the notice was without fault on his part, as required by Rule 32.1(f), Arizona Rules of Criminal Procedure.

1  Accordingly,

2  IT IS ORDERED dismissing Defendant's Notice of Post-Conviction Relief.

3 (Exh. H.) On August 20, 2009, Petitioner filed a "Request for Status of Defendant's

4 Post-Conviction Relief," and another similar filing on February 20, 2009. (Exhs. I and J.) On

5 May 1, 2009, the trial court issued a minute entry explaining that it had dismissed Petitioner's

6 PCR on April 24, 2007, and ordered another copy of that minute entry sent to Petitioner.

7 (Exh. K.)

8  On November 16, 2010, Petitioner filed a second untimely PCR notice. (Exh. L.) On

9 December 1, 2010, the trial court dismissed this second petition, concluding:

> The Court has reviewed defendant's Notice of Post-Conviction Relief filed on November 16, 2010, and defendant's Request for Preparation of Post-Conviction Record filed on November 16, 2010. Defendant pled guilty on February 22, 2006, and was sentenced by this Court on March 29, 2006. This is defendant's second Rule 32 proceeding and it has been filed in an untimely manner.
>
> Defendant claims there are newly discovered material facts which probably would have changed the verdict or sentence in his case. To be entitled to post-conviction relief based on newly discovered evidence, the defendant must show that the evidence was discovered after trial although existed before trial; the evidence could not have been discovered and produced at trial or appeal through reasonable diligence; the evidence is neither solely cumulative nor impeaching; the evidence is material; and the evidence probably would have changed the verdict or sentence. *State v. Saenz*, 197 Ariz. 487, 489, ¶ 7, 4 P.3d 1030, 1032 (App. 2000), *see also* Ariz. R. Crim. P. 32.1(e).
>
> Specifically, defendant claims that the Court made an error in sentencing him to a consecutive sentence on count five of his indictment, kidnapping in violation of A.R.S. § 13-1304. Defendant pled guilty to count five pursuant to a plea agreement and was sentenced by this Court to 12.5 years to be served consecutively to defendant's other sentences. Defendant claims that he was sentenced improperly because he believes the Court misread the presentence report in this matter and thought that the kidnapping victim was under the age of fifteen. He bases this assumption on his belief that the Court sentenced the defendant pursuant to A.R.S. § 13-1304(B) which states that if the victim of the kidnapping is under the age of fifteen, the sentence for kidnapping shall run consecutively to any other sentence imposed on the defendant.
>
> Defendant fails to support this claim. Pursuant to Rule 32.5, "Facts within the defendant's personal knowledge shall be noted separately from other allegations of fact and shall be under oath. Affidavits, records, or other evidence currently available to the defendant supporting the allegations of the petition shall be attached to it. Legal and record citations and memoranda of points and authorities are required." Ariz. R. Crim. P. 32.5. Defendant fails to provide any facts, affidavits, records, or other evidence to support this claim.

- 6 -

> In addition, the defendant is in error concerning the law. Even if the facts that defendant alleged were true, A.R.S. § 13-711 allows the Court to sentence the defendant to consecutive terms of imprisonment without relying on A.R.S. § 13-1304(B).
>
> A defendant must comply strictly with Rule 32 by asserting substantive grounds which bring him within the provisions of the Rule in order for the Court to grant relief. *State v. Manning*, 143 Ariz. 139, 141, 692 P.2d 318, 320 (1984). Defendant fails to state a claim for which relief can be granted in an untimely Rule 32 proceeding.
>
> IT IS THEREFORE ORDERED dismissing defendant's Notice of Post-Conviction Relief and denying defendant's Request for Preparation of Post-Conviction Relief Record.

(Exh. M at 1-2.) On December 8, 2010, Petitioner filed a "Motion to Object to Court Order." (Exh. N.)

On March 6, 2012, Petitioner filed a third untimely PCR notice. (Exh. O.) On March 19, 2012, the trial court dismissed the petition, concluding in relevant part:

> This is the defendant's third Rule 32 proceedings. The defendant's previous Rule 32 proceedings were dismissed by the Court on April 24, 2007, and November 26, 2010, respectively.
>
> The defendant raises a single claim for post-conviction relief in his petition. The defendant believes that the Court improperly sentenced him to aggravated terms of imprisonment. The defendant argues that he was entitled to have the aggravating factors submitted to a jury for a determination of truth beyond a reasonable doubt.
>
> As this is the defendant's third Rule 32 proceeding, it is considered to be successive and his options for relief are limited. In order to avoid exclusion pursuant to Ariz. R. Crim. P. 32.4(a), the defendant argues that there has been a significant change in the law that would apply to his case. *See* Ariz. R. Crim. P. 32.1(g). Specifically, the defendant claims that the United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296 (2004), would require that he be resentenced. The defendant's claim that *Blakely* constitutes a change in the law is simply wrong. The defendant was sentenced two years after the *Blakely* decision was handed down by the Supreme Court. Therefore, there was no change in the law.
>
> The defendant's claim is properly analyzed pursuant to Ariz. R. Crim. P. 32.1(a); that the defendant's convictions and sentences were obtained in violation of his constitutional rights. Specifically, the defendant is arguing that he was denied due process by the Court when the Court found aggravating factors to enhance the defendant's sentence instead of allowing a jury to perform that function. The Court does not need to address the merits of the defendant's claim because he cannot raise a claim of this nature in an untimely or successive Rule 32 proceeding. *See* Ariz. R. Crim. P. 32.4(a).
>
> A defendant must comply strictly with Rule 32 by asserting substantive grounds which bring him within the provisions of the Rule in order to grant

- 7 -

relief. *State v. Manning*, 143 Ariz. 139, 141, 692 P.2d 318, 320 (1984). Defendant fails to state a claim for which relief can be granted in an untimely or successive Rule 32 proceeding. Rule 32.4(a).

IT IS ORDERED denying the defendant's petition for post-conviction relief and dismissing the defendant's Rule 32. Proceeding.

(Exh. P at 2.)

Petitioner filed a petition for review on April 11, 2012, in the Arizona Court of Appeals. (Exh. Q.) The court of appeals granted review, but denied relief, in a memorandum decision dated July 17, 2013. (Exh. R.) In pertinent part, the court concluded:

> On review, Blackwater repeats his *Blakely* claim and again suggests the claim is not precluded because his illegal sentence "is an issue of subject matter jurisdiction which can be raised at any time.[FN] But Blackwater is incorrect that sentencing error involves subject matter jurisdiction. He relies on *State v. Vargas-Burgos*, in which this court stated "that a sentence that is outside the parameters of the applicable statutes . . . raises a question of subject matter jurisdiction" that therefore "can be raised at any time." 162 Ariz. 325, 327, 783 P.2d 264, 266 (App. 1989). But we concluded in *State v. Bryant*, that "we [had] used the word 'jurisdiction' imprecisely" in *Vargas-Burgos* and thus, a final judgment "remains binding and enforceable" even if erroneous. 219 Ariz. 514, ¶¶ 15-17, 200 P.3d 1011, 1015 (App. 2008); *see also State v. Maldanado*, 223 Ariz. 309, ¶ 15, 223 P.3d 653, 655 (2010) ("[C]oncluding that a court cannot enter a valid judgment because of a procedural error does not mean that the court lacks subject matter jurisdiction."). In any event, *Vargas-Burgos* did not address whether Rule 32.2, Ariz. R. Crim. P. can preclude a defendant from challenging a sentence on the grounds of illegality and fundamental error in a successive petition for post-conviction relief. In *Vargas-Burgos*, we simply refused to find waived, for purposes of the defendant's direct appeal, a claim of sentencing error that we characterized as fundamental on the ground that the defendant had failed to object in the trial court. *See* 162 Ariz. at 327, 783 P.2d at 266. Preclusion under Rule 32.2 clearly was not implicated in that case.
>
> [FN] Blackwater does not repeat his claim that *Blakely* constitutes a significant change in the law pursuant to Rule 32.1(g).
>
> Moreover, although sentencing error is subject to fundamental error review in some circumstances, it nonetheless is subject to preclusion. *See State v. Shrum*, 220 Ariz. 115, ¶¶ 6-7, 23, 203 P.3d 1175, 1177, 1180 (2009) (holding illegal sentence claim precluded); *Swoopes*, 216 Ariz. 390, ¶ 42, 166 P.3d at 958 (fundamental error not excepted from preclusion). Accordingly, even assuming that Blackwater is correct that his sentences were imposed in violation of *Blakely*, that claim is precluded because he had the opportunity to raise it in his prior post-conviction proceedings and did not do so. *See* Ariz. R. Crim. P. 32.2(a)(3).
>
> Although review is granted, relief is denied.

- 8 -

1 (Exh. R at 3-4.) Petitioner moved for reconsideration, and the court of appeals denied that

2 as well, issuing its mandate on October 14, 2013. (Exhs. S and T.)

3       Meanwhile, on August 18, 2014, Petitioner filed a fourth untimely PCR notice. (Exh.

4 U.) Within days, the trial court denied this PCR as well, explaining:

> Defendant pled guilty to one count of Sexual Abuse, a Class 5 Felony; one count of Kidnapping, a Class 2 Felony; one count of Attempted Sexual Assault, a Class 3 Felony; and three counts of Sexual Assault, a Class 2 felony. The Court sentenced the defendant on March 23, 2006, to a term of imprisonment to be followed by lifetime probation. This is the Defendant's fourth Rule 32 proceeding; it is both successive and untimely.
>
> The defendant claims, pursuant to Ariz. R. Crim. P. 32.1(g), that there has been a significant change in the law that if applied retroactively to the defendant's case, it would probably affect the outcome of the defendant's convictions or sentences. Specifically, the defendant refers to the Ethical Rule 3.8. The defendant provides no factual or legal basis to support a finding that the rule change is applicable retroactively. Further, even if the change [were] applicable to the prosecutor at the time of the trial there is no basis to find the outcome of the conviction or sentence would have been affected. Accordingly, defendant is not entitled to relief under Rule 32.1(g).
>
> A defendant must comply strictly with Rule 32 by asserting substantive grounds which bring him within the provisions of the Rule in order for the Court to grant relief. *State v. Manning*, 143 Ariz. 139, 141, 692 P.2d 318, 320 (1984). Defendant fails to state a claim for which relief can be granted in an untimely Rule 32 proceeding. Rule 32.4(a).
>
> IT IS THEREFORE ORDERED denying the defendant's Notice of Post-Conviction Relief.

18 (Exh. V at 1-2.)

19       Petitioner moved for reconsideration on September 9, 2013, and on September 26,

20 2014, the trial court also denied that. (Exhs. W and X.)

21       On July 8, 2014, Petitioner filed the instant habeas petition. (Doc. 1.) Petitioner raises

22 one ground for relief in which he alleges his Sixth Amendment rights were violated when the

23 trial court "sentenced Petitioner to an aggravated prison term based on facts that were neither

24 admitted by defendant, nor found by a jury beyond a reasonable doubt."

## DISCUSSION

26       In his Answer, Respondents contends that Petitioner's habeas petition is untimely and,

27 as such, must be denied and dismissed.

28

1    The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

An "of-right" petition for post-conviction review under Arizona Rule of Criminal Procedure 32, which is available to criminal defendants who plead guilty, is a form of "direct review" within the meaning of 28 U.S.C. § 2244(d)(1)(A). See Summers v. Schriro, 481 F.3d 710, 711 (9th Cir. 2007). Therefore, the judgment of conviction becomes final upon the conclusion of the Rule 32 of-right proceeding, or upon the expiration of the time for seeking such review. See id.

Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th Cir. 2004). A state petition that is not filed, however, within the state's required time limit is not "properly filed" and, therefore, the petitioner is not entitled to statutory tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Id. at 414.

- 10 -

In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed even though the petition is not filed until later. See Isley v. Arizona Department of Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief is also pending during the intervals between a lower court decision and a review by a higher court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold, 536 U.S. 214, 223 (2002)). However, the time between a first and second application for post-conviction relief is not tolled because no application is "pending" during that period. See id. Moreover, filing a new petition for post-conviction relief does not reinitiate a limitations period that ended before the new petition was filed. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).

The statute of limitations under the AEDPA is subject to equitable tolling in appropriate cases. See Holland v. Florida, 560 U.S. 631, 645-46 (2010). However, for equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way'" and prevented him from filing a timely petition. Id. at 2562 (quoting Pace, 544 U.S. at 418).

The Court finds that Petitioner's Petition for Writ of Habeas Corpus is untimely. Petitioner was sentenced under the plea agreement on March 23, 2006. (Exhs. E.)  By pleading guilty, Petitioner waived his right to a direct appeal, and had 90 days to file an "of-right" petition for post-conviction relief under Rule 32 of the Arizona Rules of Criminal Procedure. Because Petitioner failed to file such a petition within the prescribed time, the judgment became final for statute of limitations purposes when the 90-day period expired, on June 21, 2006, and the limitations period began to run on that date. See 28 U.S.C. § 2244(d)(1)(A); Summers, 481 F.3d at 711. The statute of limitations expired one year later on June 21, 2007. Petitioner did not file his habeas petition until July 8, 2014. Thus, absent any tolling, his petition is more than seven years too late.

Petitioner is not entitled to statutory tolling. Petitioner filed his untimely notice of post-conviction relief on April 6, 2007 – which was well after the 90-day period expired to file an "of-right" petition for post-conviction relief under Rule 32. (Exhs. G, H.)

1. Consequently, the untimely notice failed to constitute a "properly filed" petition to the state court and did not toll the limitations period. See Pace, 544 U.S. at 414-17 (holding that "[b]ecause the state court rejected petitioner's PCR petition as untimely, it was not 'properly filed,' and he was not entitled to statutory tolling under § 2244(d)(2)"). Additionally, Petitioner's subsequent state court pleadings did not toll the limitations period. These pleadings were filed after the statute of limitations ended and could not restart the expired 1-year limitations period. See Ferguson, 321 F.3d at 823.

In sum, Petitioner filed the instant habeas petition more than seven years after the 1-year limitations period expired. The Petition is therefore untimely.

The Ninth Circuit recognizes that the AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998). Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir. 2007).

Petitioner argues in his that he is entitled to equitable tolling, citing due diligence and extraordinary circumstances. However, Petitioner does not meet the stringent requirements for this extraordinary relief. Other than reciting the standard for equitable relief, Petitioner

- 12 -

1 asserts no valid reason for the untimeliness of his habeas petition, and therefore demonstrates
2 no entitlement to equitable tolling. And, Petitioner's *pro se* status, indigence, limited legal
3 resources, ignorance of the law, or lack of representation during the applicable filing period
4 do not constitute extraordinary circumstances justifying equitable tolling. See, e.g., Rasberry
5 v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal
6 sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling.").
7 Furthermore, the Court notes that the trial court reviewed with Petitioner his rights of review
8 in open court, and Petitioner reviewed and signed a notice of rights of review. (Exhs. C, F.)
9 Despite this, Petitioner failed to file a timely notice of post-conviction relief.

10 Accordingly, Petitioner is not entitled to equitable tolling and his habeas petition is
11 untimely.

## CONCLUSION

13 Having determined that Petitioner's habeas petition is untimely, the Court will
14 recommend that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be denied and
15 dismissed with prejudice.

16 **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of
17 Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH**
18 **PREJUDICE**;

19 **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave
20 to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is
21 justified by a plain procedural bar and jurists of reason would not find the procedural ruling
22 debatable.

23 This recommendation is not an order that is immediately appealable to the Ninth
24 Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
25 Appellate Procedure, should not be filed until entry of the district court's judgment. The
26 parties shall have fourteen days from the date of service of a copy of this recommendation
27 within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1);
28 Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen

days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 23rd day of April, 2015.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge